## GASKILL et al. v. MYERS.

### (Circuit Court of Appeals, Ninth Circuit. July 1, 1897.)

### No. 335.

1. PATENTS—VALIDITY OF REISSUES.

It is essential to the validity of a reissue that it shall be for the same invention as the original, as such invention appears from the specifications and claims. Topliff v. Topliff, 12 Sup. Ct. 825, 145 U. S. 156, followed.

2. SAME.

The Myers reissue, No. 11,383, for a stove consisting of devices whereby an ordinary coal-oil lamp may be used in a fireplace, is not invalid by reason of a broadening of the claims of the original through the omission of certain unpatentable elements, such as the wheels or rollers upon which the stove is supported, the handles of the reservoir, the length of the lamp chimney, and the cup-shaped shield by which the chimney is protected from liquids. Nor is this reissue invalid by reason of the granting, between the date of the original and the reissue, of the Browne patent for "an appliance for heating, illuminating, or culinary purposes"; Browne having merely substituted a base ring of the Myers original, and added a heat-deflecting ring on the top.

3. SAME—DESIGNS FOR STOVES.

The Myers patent, No. 22,911, for a design for a lamp stove, shows sufficient originality and invention to sustain its validity. Gilbert, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Northern District of California.

G. R. Lukens, for plaintiffs in error.

John L. Boone, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge. This was an action at law to recover damages for an alleged infringement of two certain letters patent issued to the defendant in error by the United States,—one, No. 11,383, which was a reissue, and the other a design patent, No. 22,911. The validity of both patents is challenged by the plaintiffs in error. In respect to a reissued patent the settled law is, as recently declared by the supreme court in the case of Topliff v. Topliff, 145 U. S. 156, 170, 12 Sup. Ct. 825, 831:

"That the power to reissue may be exercised when the patent is inoperative by reason of the fact that the specification as originally drawn was defective or insufficient, or the claims were narrower than the actual invention of the patentee, provided the error has arisen from inadvertence or mistake, and the patentee is guilty of no fraud or deception, but that such reissues are subject to the following qualifications: First. That it shall be for the same invention as the original patent, as such invention appears from the specification and claims of such original. Second. That due diligence must be exercised in discovering the mistake in the original patent, and that, if it be sought for the purpose of enlarging the claim, the lapse of two years will ordinarily, though not always, be treated as evidence of an abandonment of the new matter to the

public, to the same extent that a failure by the inventor to apply for a patent within two years from the public use or sale of his invention is regarded by the statute as conclusive evidence of an abandonment of the patent to the public. Third. That this court will not review the decision of the commissioner upon the question of inadvertence, accident, or mistake, unless the matter is manifest from the record, but that the question whether the application was made within a reasonable time is, in most if not in all such cases, a question of law for the court."

In the case cited the court proceeded to say:

"To hold that a patent can never be reissued for an enlarged claim would be not only to override the obvious intent of the statute, but would operate in many cases with great hardship upon the patentee. The specification and claims of a patent, particularly if the invention be at all complicated, constitute one of the most difficult legal instruments to draw with accuracy; and, in view of the fact that valuable inventions are often placed in the hands of inexperienced persons to prepare such specifications and claims, it is no matter of surprise that the latter frequently fail to describe with requisite certainty the exact invention of the patentee, and err either in claiming that which the patentee had not in fact invented, or in omitting some element which was a valuable or essential part of his actual invention. Under such circumstances, it would be manifestly unjust to deny him the benefit of a reissue to secure to him his actual invention, provided it is evident that there has been a mistake, and he has been guilty of no want of reasonable diligence in discovering it, and no third persons have in the meantime acquired the right to manufacture or sell what he had failed to claim. The object of the patent law is to secure to inventors a monopoly of what they have actually invented or discovered, and it ought not to be defeated by a too strict and technical adherence to the letter of the statute, or by the application of artificial rules of interpretation."

The statute upon the subject, and thus construed by the supreme court, is as follows:

"Whenever any patent is inoperative or invalid, by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new, if the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, the commissioner shall, on the surrender of such patent and the payment of the duty required by law, cause a new patent for the same invention, and in accordance with the corrected specification, to be issued to the patentee, or, in the case of his death or of an assignment of the whole or any undivided part of the original patent, then to his executors, administrators, or assigns, for the unexpired part of the term of the original patent. Such surrender shall take effect upon the issue of the amended patent. The commissioner may, in his discretion, cause several patents to be issued for distinct and separate parts of the thing patented, upon demand of the applicant, and upon payment of the required fee for a re-issue for each of such re-issued letters-patent. The specifications and claim in every such case shall be subject to revision and restriction in the same manner as original applications are. Every patent so reissued, together with the corrected specification, shall have the same effect and operation in law, on the trial of all actions for causes thereafter arising, as if the same had been originally filed in such corrected form; but no new matter shall be introduced into the specification, nor in case of a machine-patent shall the model or drawings be amended, except each by the other; but when there is neither model nor drawing, amendments may be made upon proof satisfactory to the commissioner that such new matter or amendment was a part of the original invention, and was omitted from the specification by inadvertence, accident, or mistake, as aforesaid." Rev. St. § 4916.

From the statute and from the decisions of the supreme court, it is clear that it is essential to the validity of a reissued patent that it be for the same invention as the original patent, as such invention appears from the specification and claims of such original.

Turning now to the patent to the defendant in error, in lieu of which his patent No. 11,383 was issued, we find the object of his invention therein described declared as follows:

"The object of my invention is to provide a device whereby I am enabled to use an ordinary coal-oil lamp within a grate or fireplace, and, by the employment of a peculiarly constructed inclosing casing, to prevent the flame of the lamp from being affected by the usual strong draft of the chimney flue. It also has for its object a means for providing a proper circulation of air about the lower part of the lamp and oil chamber, without subjecting it to the chimney draft, a means for concentrating the heat and projecting it into the room, and a means for opening communication with the chimney in order to discharge the odors arising when the lamp is extinguished, and prevent their escaping into the room. A valve or damper is so arranged that the top may also be used for cooking purposes."

The specification followed, making reference to annexed drawings for illustration, describing a casing, A, of a segmental or parabolic form, in horizontal section, the axis being in a vertical line, and a corrugated or other reflecting surface, B, fitted around the inner surface. The exterior form of the back, the inventor declared, "is adapted to fit into the fireplace after the basket and ash pan have been removed; but the casing may be made in other forms without altering the character of my invention." The bottom of the casing, B¹, is described as having a large opening through the center, into which the oil reservoir of the lamp, C, is fitted. The reservoir is of large size, and has certain described handles, D, upon each side, by which it may be conveniently taken out or replaced when necessary. The burner, the inventor declared, may be of any well-known or suitable construction, and has a glass chimney, E, extending up into the upper portion of the apparatus. The bottom, B, is described as supported upon a base, F, which has the rear portion approximating in shape to the rear of the curved body, A. The base is described as being of considerable depth, so as to allow the lamp reservoir to be suspended within it without touching the surface upon which the apparatus stands, and the inventor adds:

"I have shown the base mounted upon small wheels or rollers, G, which allows it to be easily drawn out or pushed back into place."

The specification proceeds:

"Through the front and top of this base are made a number of holes, H, and through the top in which the lamp reservoir is suspended the holes are made so that air may readily draw through the openings in the base, and thence up through these holes around the exterior of the lamp, thus producing a circulation of air within the body of the stove and around the reservoir and lamp, to keep the parts cool, and especially to prevent overheating the reservoir by reason of its confinement within the casing. The cap or upper portion, J, is inclosed as shown, and has a horizontal closed top, K, with a number of small holes, K¹, in the front, to allow the heat which rises into the upper portion of the casing from the lamp to pass out through these openings into the room. This device is adapted to be fitted into the fireplace or openings for any grate, by simply removing the basket and ash pan therefrom; and it may be rolled into place upon the rollers, G, so that any odors which may arise from the lamp when it is extinguished will escape through the valve or register, L, which is partially opened for the purpose. The heat will be thrown out by direct radiation, and by the action of the reflector behind the lamp, and the room will at the same time be lighted sufficiently for all ordinary purposes. By the use of the casing closed behind and at the top, the lamp is protected from the strong draft of the fireplace chimney; the open or perforated front and bottom supplies air to keep the lamp cool; the closed top,

with perforations in front, and the open front, with reflector behind, concentrate the heat and throw it out into the room, and at the same time protect the lamp from drafts which would break the chimney or prevent perfect combustion. If it is desired to use the stove for cooking purposes, it is made available by the use of the damper or register, L, which turns in a frame, M. so as to close the openings in said frame, or open them, like the ordinary rotary register. The frame, M, has upwardly projecting points, N, which serve to support any vessel containing material which it is desired to heat or cook at this point. When the device is to be used for cooking in this manner, it is simply drawn out from the fireplace sufficiently to expose the top and the register, which is opened for the purpose of cooking, as before described. When used for heating purposes, it is preferably allowed to stand within the fireplace, and by reason of the peculiar construction a great amount of heat is developed from it. Below the register is suspended a concave or cup-shaped guard, O, which, diverging above the lamp chimney, will prevent any liquids spilled or boiled over the top of the cooking vessel from falling upon and breaking the chimney. By means of the register in the top I am also enabled to regulate the amount of heat without turning the lamp wick down or extinguishing it entirely, for by opening the register much heat will be allowed to escape up the chimney. If the lamp is turned low, any odors arising from imperfect combustion will escape through the register and into the chimney."

Having thus described his invention, the inventor added what he claimed as new and desired to secure by letters patent, as follows:

"(1) A stove, consisting of the body, having a base and wheels or rollers upon which said body is supported, openings around the front of the base for the admission of air, a floor forming the top of said base, with a central opening, a lamp reservoir having handles and fitting said opening, perforations made in the floor surrounding the lamp to allow circulation of air through the base and floor, a top with openings and register, and a curved back adapted to fit the fireplace, and extending downward below the level of the top of the lamp chimney, with perforations for the escape of heat, substantially as herein described. (2) A stove, consisting of the segmental body section with a correspondingly shaped reflector fitted around its inner surface, and adapted to fit the fireplace, a base and floor having openings for the circulation of air, a central opening, a removable lamp, the reservoir of which is adapted to fit said opening and is provided with handles, an upper closed portion or cap into which the chimney of the lamp extends, a register frame having openings and upwardly projecting points to support a utensil for cooking purposes, and a valve by which the openings in said register may be exposed or closed, substantially as herein described. (3) A fireplace stove, consisting of a lamp, a casing closed at the top, back, and sides, within which the lamp is suspended, a base perforated to allow air to circulate, an open front, and a reflector at the rear of the lamp, a closed top into which the top of the chimney extends, and openings in front for the escape of heat, substantially as herein described. (4) A fireplace stove, consisting of a lamp, a casing closed at the top, back, and sides, within which the lamp is suspended, a closed base perforated to allow air to circulate, an open front, an inclosure above into which the top of the lamp chimney extends, a register in the top, and a support for a cooking vessel, and a cup-shaped shield by which the lamp chimney is protected from liquids, substantially as herein described. (5) A stove, consisting of a horizontal bottom supported above the floor level to allow a free circulation of air beneath, and having a central opening in the bottom, a removable lamp reservoir suspended in the opening and projecting below the bottom, perforations in the bottom around the reservoir, a segmental casing extending upward around the rear of the lamp, and an inclosed and perforated top, substantially as herein described."

Although it is quite evident from the specification and claims of this original patent that the construction claimed and thereby patented was a stove for use in, and in connection with, an open fireplace or grate, it does not follow that the thing invented may not be used elsewhere. That there is no essential change in the specification contained in the reissued patent is conceded by the plaintiffs in error. The claims of the reissue are undoubtedly broader than

those of the original. They omit all reference to a fireplace and grate. But neither a fireplace nor a grate constituted any part of the invention. The claims of the reissued patent also omitted certain elements which were embraced in the claims of the original patent, but which really constituted no part of the invention; that is to say, the first claim of the original patent made the "wheels or rollers" upon which the stove is supported one of the elements of the claim. But there is no invention in putting rollers under a stove or other thing to make it movable, as was held by the supreme court in Hendy v. Iron Works, 127 U. S. 370, 8 Sup. Ct. 1275. A claim which made what was no part of the invention one of its elements, and consequently essential to its infringement, was therefore clearly defective, which defect was properly cured by omitting the improper element from the reissue. For the same reason the handles of the reservoir, which were made an element of the second claim of the original patent, but which, being attached only for the purpose of the more conveniently removing the reservoir, constituted no part of the invention, were properly omitted from the claims of the reissue, thereby correcting that defect of the second claim of the original patent. The same may be affirmed in respect to the length of the lamp chimney described in the third claim of the original patent, and in respect to the cup-shaped shield by which the lamp chimney is protected from liquids. We are of opinion that the reissued patent did not go beyond the real invention, as shown by the specification and claims of the original patent.

Nor does the fact that, intermediate the issuance of the original patent and the application for the reissue, a patent was granted to F. E. Browne for an "appliance for heating, illuminating, or culinary purposes," defeat the reissue. That Browne was aware of the complainant's original patent is manifest from this statement in his specification:

"Heretofore heating appliances have been constructed with a lamp-sustaining base having a lamp seated within a central opening. My invention is to be distinguished from appliances of such character in that the base of such prior appliances have been made of material having high heat-conducting qualities, and, in order to prevent the heating of the oil receptacle of the lamp, such bases have been perforated around the lamp seat to admit an upward draft of cold air around the lamp, so that the air discharged from the heat-emitting opening, E, has been heated by convection and radiation, and there has been an ascending draft of air all about the lamp exterior to the chimney, which draft carried off the heat to the upper part of the room, thus impairing the effective heating qualities of the appliance. In my heating appliance the draft of air around the lamp chimney is practically done away with, and the heated air which passes from the appliance consists simply of that which has been heated with direct contact of the flame in inducing combustion, and nearly the entire amount of heat is by radiation directed outward at right angles from the lamp chimney and the lamp containing heat deflector, D, instead of ascending to the upper part of the room through the medium of the heated and expanded air which surrounds the lamp chimney, and which in said appliance, as heretofore constructed, rises rapidly, and carries the heat to the upper part of the room, instead of allowing it to pass outward. By making the base ring of nonheating and non heat absorbing material, substantially, such as wood or other suitable material, all danger of heating the oil is avoided. The heat-deflecting wall is perpendicular to the base ring, so that the heat is directed outward horizontally, and not downward upon the base. The upper heat deflector and radiating

drum, H, serves also with great efficiency and economy as a heat radiator, detaining and distributing, by convection, a large portion of the heat which otherwise would pass upward into the upper part of the room, and thereby cease to be effective to heat the lower part of the room, where the heat is required."

His claims are:

"(1) The appliance for heating, illuminating, and culinary purposes, consisting of the combination of the imperforate non heat conducting base ring mounted upon suitable supports, and arranged to receive within its circle a suitable lamp, and having a wall seat arranged at a distance from its inner circle to leave suitable space between the heat-deflector wall when in place upon such seat and a lamp when seated in such seat, a lamp provided with an interior central draft flue, the heat-deflector wall having a heat-emitting side opening, a suitable spider-supporting breast arranged upon such wall, an open spider mounted upon such breast, and a removable heat-deflecting drum arranged to fit upon such breast around such spider. (2) The appliance set forth, consisting of the combination of an imperforate non heat conducting base ring mounted upon suitable supports, and arranged to receive within its circle a suitable lamp, a lamp provided with an interior central draft flue, the heat-deflector wall having a heat-emitting opening, the heat-deflecting drum mounted upon such wall, and a register arranged in the top of the drum."

Browne thus substituted for the metal base ring of the Myers stove a base ring of wood, or other non heat conducting material, and added a heat-deflecting drum on top. With these exceptions, the first claim of the complainant's original patent, which is the same as the fifth claim of the reissue, covered the construction for which Browne's patent was issued.

In respect to the design patent, we are not prepared to say that it does not show originality and the exercise of the inventive faculty. None of the stoves relied on to defeat this patent show a semicylindrical body or case. Form and shape are elements of a design. In Hammond v. Agricultural Works, 17 C. C. A. 356, 70 Fed. 716, cited by the plaintiffs in error, what the plaintiff there did, and all that he did, was to substitute for the platform which had been previously used on the rear end of certain existing street cars an open compartment precisely similar to the open compartment which was in use at the front end of those cars, which we held was nothing more than the exercise of the imitative faculty. The judgment is affirmed.

GILBERT, Circuit Judge (dissenting). I concur with the majority of the court in arriving at the conclusion that the judgment of the circuit court should be affirmed, but I am unable to assent to that portion of the opinion which sustains the validity of the design patent of the defendant in error. The claim of that patent is for a "design for a lamp stove consisting of a semicylindrical body with an open front, a cylindrical top surmounting the semicylindrical body, and an ornamental top piece, all as herein shown and combined." It appears from the record that five years before the date when the defendant in error applied for his patent an application for a patent had been filed by Landon Ketchum for a gas stove, with drawings showing a stove with a semicylindrical body and an open front, surmounted by a cylindrical top and an ornamental top piece, containing all the specified features of the patented design of the defendant in error. The plaintiffs in error have constructed a gas stove which likewise contains these general features, but otherwise

no more resembles the design of the defendant in error than it does that of the Ketchum patent. It does not appear, however, that on the trial of the cause the plaintiffs in error requested the court to instruct the jury specially upon that branch of the case, or that they excepted to the submission of both causes of action to the jury, or that they otherwise took steps to segregate the action on the design patent from the case, or to protect their rights as against that patent. I find no error, therefore, for which the judgment should be reversed.