# IN RE HOEY.

PATENTS; PATENTABILITY; CLAIMS; ANTICIPATION; REISSUES.

1. Where there are many devices on the market which closely resemble each other in appearance and structure, it is necessary for an applicant for a patent for a similar device, to carefully limit and differentiate his claims in his application.

2. While the courts deal liberally with inventors, they will not permit the real inventor to be deprived of the fruits of his genius and labor by a mere copyist.

3. Claims in an application for a patent for a combination in a bed couch are anticipated by a patent wherein the same structure is found, except that the projections to the end of the seat extend from the *upper* instead of the *lower* side thereof, and project just beyond the back, instead of to a point just within the box, although so changing the

seat projections may give a better balance to the box and seat, as such a change involves nothing more than mere mechanical skill.

4. Obtaining a more attractive exterior, or securing a more salable article, does not prove originality of conception.

5. In a box couch combination, a claim providing for small stops on either end of and within the box, so placed that, when the seat is opened sufficiently to balance the back, the projecting arms strike thereon or come in contact therewith, is anticipated by a construction in which the back of the box itself performs the same function.

6. A reissue must be one in fact, and not an additional patent on something neither shown nor described in the original application. (Construing U. S. Rev. Stat. sec. 4,916, U. S. Comp. Stat. 1901, p. 3393.)

7. Enlargements of an original specification are not permitted, which will interfere with other inventors who have entered the field in the meantime. (Citing *Re Dilg*, 25 App. D. C. 9.)

No. 367.   Patent Appeals.   Submitted November 16, 1906.   Decided December 4, 1906.

HEARING on an appeal from a decision of the Commissioner of Patents rejecting certain claims in an application for the reissue of a patent.                                *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. T. Walter Fowler* for the appellant.

*Mr. Fairfax Bayard* for the Commissioner of Patents.

Mr. Justice ROBB delivered the opinion of the Court:

Hearing on appeal [by John Hoey] from a decision of the Commissioner of Patents refusing the following claims upon an application for the reissue of a patent:

"10. The combination in a bed couch of a containing box or case, a seat hinged to the top of the box between the front and rear edges thereof, said seat having rearward projections extending from its under side and beyond and below the hinges and within the box, a back pivotally connected with the seat,

and a foldable leg connected with the back and with said seat projections."

"13. In a bed couch, the combination of a hollow base, a seat hinged to the base and having rearward projections within the base and below and beyond its hinges, a back turnably connected with the seat, and braces connecting the back with said seat projections, and tiltable in unison with, and normally holding the back at right angles to, the seat."

"17. The combination in a bed couch of a containing box or base, a seat hinged to the top of the box between the front and rear, said seat having side bars extending back of and below the hinges and within the box, and a suitable stop between the side bars and the base to keep the seat from tilting farther back than is desirable."

"18. In a couch, the combination of a hollow base, a seat hinged thereto between the front and rear thereof and having projections extending behind its hinges, a back hinged to the seat, hinged legs carried by the back, braces hinged to the legs and to said rearward projections on the seat, said legs and braces co-operating with the back to hold the back and seat at right angles to one another, and means to prevent the accidental disarrangement of said braces and legs relative to said back and thereby allow the back and seat to open out, when the seat is opened to give access to the box."

"21. In a couch, the combination of a box, a seat hinged thereto forward of the back edge of the box and forming a cover therefor, rearward projections on the back of the seat, a back hinged to the seat, legs hinged to the back, braces hinged to the legs and to said rearward projections, said legs foldable against the back with the pivots of the braces and legs in front of the lines through the pivots of the legs to the back and the braces to the projections to hold the back at right angles to the seat, and said seat and back adapted to be turned in unison on the seat hinges to give access to the box, means for holding the seat in lifted position, and means to prevent the legs and braces falling down accidentally when the seat is in such lifted position."

The references, upon which the primary examiner and the Examiners-in-Chief rejected the claims, are: Buhner, April 9, 1901, No. 671,906; Weyer, May 9, 1899, No. 624,691; Beloud, July 27, 1897, No. 586,959. The Commissioner, however, in his decision was satisfied to rely solely upon the Buhner patent.

The above claims, as will be seen, have reference to a so-called bed couch, which, as the term implies, serves the double purpose of a couch and bed. There are many kinds of bed couches on the market, which closely resemble each other in appearance and structure; hence it was necessary for this applicant in his original and in his reissue application to carefully limit and differentiate his claims. This fact, in view of his present contention, is material.

This bed couch, briefly described, consists of a box which constitutes the base, and a seat portion about three fourths as wide, and hinged in the rear upon the top of the box. The front of the seat portion, being even with the front of the box, of course, leaves an open space of about one fourth of the width of the box in the rear of the seat. Suspended nearly over this open space, and attached as hereafter described, is the back of the couch, the framework of both seat and back being upholstered. Firmly fastened to either end of the bottom of this seat are two side arms, which project almost to the back of and, of course, just inside the box, where they are pivoted or hinged to braces connected with the lower part of the folding legs to the adjustable back of the couch, the other ends of the legs being in turn pivoted with the upper rear portion of the back. When the back is in a vertical position, its folded legs and the arm braces pivoted therewith are also nearly vertical, being inclined just enough forward in the center, that is, at the point where they are pivoted, to lock the legs into position in the channel provided therefor, and at the same. time lock and brace the back in its vertical position. This back is directly connected with the seat by two braces pivoted or hinged in the center, one end of each being firmly fastened to the inside top end portions of the seat, a little forward of the hinges on the bottom of the seat, the other ends of said braces being firmly

fastened to each end of the back.   The projections or arms on
the under side of the seat being within the box, and being con-
nected with the legs of the back by pivoted braces, it follows
that, when the back is lowered, or, technically speaking, in a
horizontal position and the legs down, either the back of the
box must be cut away at each end, or slots cut therein, to per-
mit the passage of said braces, one end of each being pivoted to
said seat projections or arms just within the box, and the other
end of each then extending downward outside of the box to the
lower ends of said legs..  When the seat is raised, the stationary
arms on the bottom necessarily project downward within the
box.   Small stops are provided on either end within and near
the bottom of the box, against which the arms strike when the
hinged seat is raised sufficiently high to balance the back.

In the Buhner patent we find exactly the same structure
except that the projections to the ends of the seat extend from
the *upper* instead of the lower side thereof, and project just
beyond the back of, instead of to a point just within, the box.
Projecting just beyond the back of the box, no slots are neces-
sary, as the pivoted braces connecting the projections with the
legs of the couch back do not at any time come in contact with
the back of the box.   It is claimed that, by changing the seat
projections from the *upper* to the *lower* side thereof and with-
in the box, a better balance of the box and seat is secured.
Claims 10 and 13 relate to and embody this change.   It seems
to us clear that these two claims are anticipated by the Buhner
construction, and that the change involves nothing more than
mere mechanical skill.   While it is true that courts deal liber-
ally with inventors, it is equally true that they do not, and
ought not, to permit the real inventor to be deprived of the fruits
of his genius and labor by a mere copyist.  It is possible, but not
apparent, that a better balance of the seat and back is secured
by changing these projections.   It is possible that a more attrac-
tive exterior is thereby presented.   It is possible that a more
salable article is thereby secured, but all this does not prove
originality of conception.   We must look to the thing itself, ex-
amine its structure, and compare the new with the old.   When

we do this, we are forced to conclude that had any competent mechanic been directed to change the location of these projections or arms so that they would be within instead of without the box, he would speedily have accomplished the result embodied in these two claims.

Claim 17 involves the little stops on either end of and within the box, and so placed that, when the seat is opened sufficiently to balance the back, the projecting arms strike thereon or come in contact therewith. In the Buhner construction the back of the box itself serves the same purpose, or, to use a more apt expression, performs the same function. The lack of originality in these stops is so apparent that we dismiss the claim without further comment.

We next consider claims 18 and 21, which include "means to prevent the accidental disarrangement" of the legs relative to the back when the seat is raised, the "means" being the slots in the back of the box into which the braces hinged to the legs drop when the back is down. It is now contended that the bottoms of these slots form supports or stops for the leg braces when the seat is raised, and thereby prevent the braces from unlocking or opening out and releasing the back and seat. It is urged that, while this important function was not included in the original application, it was nevertheless suggested by the original specifications and drawings, and that, therefore, it should not now be considered new matter. These two claims were not only not in the original application, but they were not in the original reissue application. The original patent was granted November 25, 1902, and the original application for reissue, containing *17 claims,* was filed September 1, 1904, and it was not until June 16, 1905, that claims 18 and 21 were filed. If these claims were in fact suggested by the original specifications and drawings, it is a little singular, to say the least, that appellant, a man skilled in the art, should have taken so long to discover the fact. In his original specifications he stated that these slots were made "in order to allow the braces, which are connected with the rear ends of the side bars, to drop into the inclined position which they occupy when the back and the legs have

been opened outwardly," and, when the seat is lifted, to allow the braces "to drop into the slots    *    *    *    until the bottom rail of the back contacts with the upper edge of the box." Neither this language nor the original drawings, in our opinion, justify the present claim.   These slots were evidently original- ly cut in the back of the box to make room for the braces, and not for the purpose now claimed.   Had they been designed to perform the function now claimed, obviously they would have been cut at a different angle, and the drawings and specifications would have shown contact between the braces and the slots when the seat was opened.   The law authorizes a reissue of a patent under certain conditions, but the reissue must be one in fact, and not an additional patent on something neither shown nor described in the original application.   Sec. 4916, U. S. Rev. Stat. U. S. Comp. Stat. 1901, p. 3393, so far as applicable, reads:

"Whenever any patent is inoperative or invalid, by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new, if the error has arisen by in- advertence, accident, or mistake, and without any fraudulent or deceptive intention, the Commissioner shall, on the surrender of such patent and the payment of the duty required by law, cause a new patent for the same invention, and in accordance with the corrected specification, to be issued to the patentee; *    *    *    but no new matter shall be introduced into the speci- fication, nor in case of a machine patent shall the model or drawings be amended, except each by the other; but when there is neither model nor drawing, amendments may be made upon proof satisfactory to the Commissioner that such new mat- ter or amendment was a part of the original invention, and was omitted from the specification by inadvertence, accident, or mis- take, as aforesaid."

That appellant did not regard the feature embodied in these two claims as part of his original invention is to us clear. The language of the Supreme Court in *Chicago & N. W. R. Co.* v. *Sayles,* 97 U. S. 554, 24 L. ed. 1053, is therefore applicable:

"The law does not permit such enlargements of an original specification, which would interfere with other inventors who have entered the field in the meantime, any more than it does in the case of reissues of patents previously granted.    Courts should regard with jealousy and disfavor any attempts to enlarge the scope of an application once filed, or of a patent once granted, the effect of which would be to enable the patentee to appropriate other inventions made prior to such alteration, or to appropriate that which has, in the meantime, gone into public use."    See also *Re Dilg.* 25 App. D. C. 9 ; *Gaskill* v. *Myers,* 26 C. C. A. 642, 48 U. S. App. 494, 81 Fed. 854.

Finding no error in the record, the decision appealed from will be affirmed, and this opinion and the proceedings in this court will be certified to the Commissioner of Patents as required by law; and it is so ordered.                *Affirmed.*