## Wytheville.

### BANNER v. ROSSER.

JULY 7, 1898.

Absent, Cardwell, J.

1. CONTRACTS—*Confidential Relations of Parties—Cessation of such Relations—Case in Judgment.*—Courts of equity scrutinize closely transactions between persons holding fiduciary and confidential relations to each other, and will not permit a purchase by a trustee from the beneficiary, or by an agent of his principal, to stand, except where there has been entire good faith, a full disclosure of all the facts and circumstances affecting the transaction, and the absence of all undue influence, advantage, or imposition. But a previous confidential relation which has been long since dissolved, is not a ground to avoid a contract fairly made between the parties. In the case in judgment the confidential relation between the parties had ceased nearly two years before the making of the contract in controversy, the contract was fairly made, with full knowledge of the facts, the parties were competent to contract, there was no undue influence exercised, there was an absence of fraud, and the contract was not unconscionable, but such as persons might be reasonably expected to make under the circumstances.

2. CONTRACTS—*Capacity—Unreasonable and Imprudent Contracts.*—A contract fairly and voluntarily entered into between parties having capacity to act cannot be set aside, however unreasonable or imprudent it may seem to others.

3. ACKNOWLEDGMENTS—*Sufficiency of Certificate—Deeds by Corporations—How Executed and Acknowledgment Certified.*—A certificate of acknowledgment to a deed which identifies the subscriber; specifies the writing subscribed; states the capacity in which the subscriber executed it; and certifies his acknowledgment thereof, contains all that is necessary. In the case in judgment the deed of a corporation was signed by the corporation by its president, with the corporate seal affixed, and the certificate of the notary states that "Thomas L. Rosser, presi-

. dent, whose name is signed to the writing hereto annexed, bearing date on the 2d day of December, 1891," acknowledged the same before him in his county. This was a sufficient execution of the deed by the corporation, and the certificate of acknowledgment is in due form.

Appeal from a decree of the Circuit Court of Scott county pronounced August 27, 1894, in a suit in chancery wherein the appellant was the complainant, and the appellees were the defendants.

*Amended and Affirmed.*

The opinion states the case.

*White & Penn* and *W. W. Bird*, for the appellant.

*W. E. Burns, J. B. Moon* and *J. C. Gent*, for the appellees.

RIELY, J., delivered the opinion of the court.

George Banner, on March 20, 1890, sold and conveyed to Thomas L. Rosser, certain lands on Clinch river, in Russell county, containing in the aggregate 904 acres, for the sum of $90,400, of which $20,400 was to be paid down, and the residue as follows: $20,000 on May 15, 1890; $25,000 on October 15, 1890; and $25,000 on April 15, 1891. Notes were given for the deferred instalments, bearing interest from the day of sale, and the vendor's lien reserved on the face of the conveyance to secure them. The cash payment of $20,400 was duly made, and the note for $20,000, due on May 15, 1890, was paid at its maturity. The two notes for $25,000 each, payable respectively on October 15, 1890, and April 15, 1891, were not paid, and this suit was brought to July rules, 1892, to enforce the vendor's lien, and subject the land to their payment.

Rosser promptly answered the bill, and averred that the two notes had been fully settled and discharged, and he released

from all liability upon them. In support of the averment, he exhibited with his answer an agreement in writing, executed by him and the complainant, by which the complainant agreed to purchase and take back from Rosser the said land, exclusive of 279 acres thereof which had been divided up into town lots and sold off to various persons, in full payment, satisfaction, and discharge of the principal and interest of the aforesaid two notes. By the said agreement, Rosser covenanted to have the residue of the land, which had been also divided up into town lots, granted and conveyed by a proper deed to Banner by the Minneapolis Improvement Company, which had become the owner thereof, and Banner covenanted that cotemporaneously with the delivery to him of the deed of conveyance, he would receipt and deliver up the said notes to Rosser. On December 2, 1891, the Minneapolis Improvement Company, in accordance with the provisions of the agreement, executed a deed conveying to Banner the residue of the land, which, after being duly acknowledged for record, was transmitted for delivery to Banner, but when tendered to him, he refused to receive it.

The complainant twice amended his bill, making, by the last amendment, the New South Mining and Improvement Company and the Minneapolis Improvement Company, of which Rosser was president, parties defendant along with him, and attacking the validity of the agreement of November 13, 1891, upon sundry grounds.

It was first objected that it was invalid because Rosser stood in a confidential relation to the complainant. For the due consideration of this objection, it is necessary to advert to transactions between the parties which preceded the sale by Banner of his land to Rosser on March 20, 1890. It appears from the great mass of testimony taken in the cause that Rosser, in the summer of 1887, was consulting engineer of the Charleston, Cincinnati and Chicago Railroad Company, whose line of road was then in course of location and construction,

and also had charge of the Development Companies it was proposed to establish along its line. While examining the country with the view of selecting a crossing of the Clinch Valley for the railroad, he became impressed with the favorable location of the farm of Banner as the site of a future town or city. The Norfolk and Western Railroad Company had run a preliminary line along and north of Clinch river, opposite the farm of Banner, which lay south of the river, for the projected Clinch Valley Branch of its line of railway. The line of the Charleston, Cincinnati and Chicago Railroad had not been definitely located, but a preliminary line had been run which crossed the river many miles below the farm of Banner. The company agreed, at the instance of Rosser, to change the location of its line and make its junction with the Clinch Valley branch of the Norfolk and Western Railroad Company, just across the river from the farm of Banner, if it could be secured for development purposes, thus imparting to it, it was supposed, great adventitious or speculative value. Rosser sought the acquaintance of Banner, and laid his plans before him. Banner became interested in the scheme, and together they repaired to Lebanon, the county seat, in order that Banner might get the advice of his counsel. The scheme was unfolded by them to the counsel. It received his favorable consideration, and he, thereupon, drew up a deed which was executed by Banner, whereby he conveyed, on September 24, 1887, to Thomas L. Rosser, president of the New South Mining and Improvement Company, his land in Russell county, according to certain boundaries, but which were to be thereafter definitely ascertained by a competent surveyor, and, when so ascertained, were to constitute a part of the deed.

The deed recited that it was made subject to certain conditions and limitations therein expressed, and that these were the main inducements of the conveyance. The conditions and limitations referred to were as follows :

" First. The said Thomas L. Rosser, president, as aforesaid,

shall proceed as expeditiously as may be, to establish on said lands, a town or city cite, and shall have the same surveyed, and laid out in town lots, with proper streets, alleys, &c., which shall be mapped, numbered, and designated.

" Secondly. The said Thomas L. Rosser, as president, aforesaid, shall make sale of said lots from time to time as he may consider best and most profitable to *bona fide* purchasers, and as sales are made, and proceeds are realized, he shall pay one half of the same to George Banner, his heirs, executors, and assigns.

" Thirdly. Said George Banner shall remain in exclusive possession of all the lands or lots, from time to time, remaining unsold by the party of the second part, his successors, or assigns.

"Fourthly. Said Thomas L. Rosser, president, as aforesaid, his agent and employees, shall be allowed to enter upon said lands at will, for the purpose of making all necessary surveys, and laying out said land in lots aforesaid, and for purposes of improvements.

" Fifthly. In the event of the failure of the said Thomas L. Rosser, his successors or assigns, to lay out in a town or city the lands aforesaid, or any part thereof, then the same, or any part thereof not so laid out and sold for the purpose aforesaid, shall revert to and be the property of the said George Banner, and the said Thomas L. Rosser, president, his successors and assigns, shall reconvey the same to the said Banner, his heirs, and assigns.

" This deed further witnesseth that the time and manner of laying out said land into lots, streets, etc., and the manner and time of making sales thereof, from time to time, are all left to the judgment and decision of Thomas L. Rosser, provided he shall obtain the best and highest price said properties will command.

" It is likewise understood and stipulated that the said Thomas L. Rosser, president, and his successors and assigns,

shall pay all the expenses of surveying, laying out and mapping lands into lots, streets, etc., and shall pay all expenses of conveying to purchasers, and when said lands are mapped and laid out and numbered, the same shall be recorded.

"This conveyance further witnesseth that the party of the second part shall hold the lands aforesaid, subject to all and singular, the conditions herein named, and the said George Banner and Priscilla, his wife, warrant generally the lands herein conveyed, free from all encumbrances and liens, and against the claims of all persons whomsoever."

On October 24, 1887, a further deed was made by Banner to Rosser, president as aforesaid, perfecting the previous conveyance with respect to the boundaries of the land thereby conveyed as the same had been ascertained by the surveyor, and fixing the number of acres at 868, more or less. This deed was made subject to all the conditions, provisions, and stipulations of the deed of September 24, 1887.

The effect of these conveyances was to create a relation of trust and confidence between Banner and Rosser, which constitutes the foundation of the first objection made to the validity of the agreement of November 13, 1891.

The New South Mining and Improvement Company, in obedience to the provisions and stipulations of the said deeds, surveyed and laid out the land as a town site, divided it into town lots, streets, and alleys, built a bridge across Clinch river, and got ready to dispose of the lots to the public, but when it undertook to sell the lots, it was confronted with the fact that there were many judgments against Banner, aggregating a large amount, which constituted liens upon the land at the time he conveyed it to Rosser; that a suit in chancery was pending to enforce the judgments against the lands; that an account of the liens had been taken, and the cause made ready for a decree of sale, which circumstances prevented a clear title from being made to the lots and interfered with their sale.

In view of this condition of affairs, in order to save the lands from a forced sale by the court and to secure to Banner the gains, which, it was expected, would be realized from the scheme provided for under the deeds of September 24, and October 24, 1887, it was deemed best to make a new arrangement, by which the requisite funds could be raised to discharge the liens. Rosser, as president of the New South Mining and Improvement Company, thereupon, on November 27, 1888, conveyed the land back to Banner, and he in turn reconveyed it on the same day to Rosser in his own right. A collateral agreement was cotemporaneously executed by them, by which Rosser agreed to raise the sum of $15,000, which, it was supposed, would be sufficient to discharge the liens, and to place it in the hands of W. A. Ayers to be applied by him to that purpose, and if more than sufficient for the discharge of the liens, he was to pay the balance over to Banner. In the event that the sum was not raised and placed by Rosser in Ayer's hands within sixty days, then he was to reconvey the land to Banner. By the said agreement, Rosser also bound himself to endeavor to sell off the land in lots for a town or city, if practicable, upon such terms as he should deem best, and for the best price he could obtain, the proceeds of sale to be equally divided between Banner and himself, subject to the right of Rosser to be first reimbursed out of Banner's half for the $15,000 to be advanced by him to pay off the liens.

Rosser had difficulty in raising the money to pay off the liens, and it was also ascertained that $15,000 would be insufficient to discharge them. On January 14, 1889, Banner, by a written agreement, extended the time for raising the amount necessary to pay off the liens, and on March 5, 1889, again extended it. On the latter date, Rosser, as a means of raising the money, conveyed the land to the New South Mining and Improvement Company, of which he was still the president, and on June 25, 1889, it conveyed the same to the Minneapolis Improvement Company, of which Rosser was also the presi-

dent, and which company was incorporated for the express purpose of pushing the contemplated town or city, and making it a reality.

It was under this state of things, and while Banner and Rosser bore to each other the confidential relations created by the several conveyances and agreements referred to, that the deed of conveyance of March 20, 1890, was made, whereby Banner sold and conveyed the said land and certain other small parcels, embracing in the whole 904 acres, to Rosser in his own right, without any condition or limitation, for the sum of $90,400 upon the terms set forth in the early part of this opinion, but reserving the vendor's lien for the unpaid purchase money, for the enforcement whereof for the last two instalments of $25,000 each this suit was brought.

This deed was prepared by the regular counsel of Banner, after full conference with him and Rosser. No complaint has been made that it was not perfectly fair, the free and voluntary act of Banner, and in every respect binding, which is conclusively manifested by the suit of the complainant, recognizing its validity and seeking to enforce for the payment of the unpaid purchase money the vendor's lien therein reserved to secure it. It refers specifically to all of the previous conveyances and contracts made between Banner and Rosser, with all and singular their conditions, reservations, and limitations, and in consideration of the sale then made, by mutual agreement *sets aside, rescinds, and annuls them.* The effect of this deed was to terminate the past relations of trust and confidence between the parties, and to create the new relation of creditor and debtor.

Equity wisely views with jealousy transactions between persons holding a fiduciary or confidential relation to each other, and will not suffer one party, standing in a relation of which he can avail himself against the other, to derive an advantage from that circumstance, for it is founded in a breach of confidence. These relations and the equitable prin-

ciples governing them are fully discussed by Story in his Equity Jurisprudence, 1 Vol., secs. 307, 323. See also *Statham v. Ferguson*, 25 Gratt. 28. A court of equity, in accordance with these principles, will scrutinize with a " close and vigilant suspicion," a purchase made by a trustee from the beneficiary or by an agent of the property of his principal, and will not permit it to stand, except where there has been entire good faith, a full disclosure of all facts and circumstances affecting the transaction, and the absence of all undue influence, advantage, or imposition. 1 Leading Cases in Equity, Pt. 1, p. 360; 2 *Id.*, 2 Pt. pp. 1228–'9; and 1 Story's Eq. J., sec. 315.

In the case at bar, the sale was made by Banner under the advice of his counsel and the conveyance prepared by him after a full disclosure of the facts. It was then executed by Banner, and witnessed by the counsel. No complaint of any unfairness in its procurement is made, or of any advantage taken of Banner by Rosser alleged. Its validity is not questioned, but on the contrary, the very object of the suit is, as we have seen, to uphold and enforce it. It is, therefore, to be given the effect intended by it. It constituted a valid sale of the land to Rosser, terminated absolutely the previous relation of trust and confidence between the parties, and created the new relation of vendor and vendee, creditor and debtor. Where the fiduciary relation has been completely dissolved and the parties are no longer under the antecedent influence, they are restored to their common competency to deal with each other. 1 Story's Eq. J. (11th Ed.), secs. 313 and 316 (a); and Kerr on Fraud and Mistake, 159.

When the contract of November 13, 1891, was entered into, whereby Banner agreed to purchase and take back the unsold land in satisfaction and discharge of the two notes for $25,000 each, the confidential or fiduciary relation between him and Rosser had been wholly dissolved for the period of a year and eight months. The parties in their dealings were no longer subject to its influence. Their transactions had ceased to be

regarded by equity with the jealousy that it views the dealings between persons occupying that relation. It follows that the contract in question is to be treated as a transaction between any other creditor and debtor. The wild and inexplicable speculation in lots in imaginary towns and cities had subsided, and the Minneapolis Improvement Company, in which the title to the land was then vested had become seriously embarrassed, if not insolvent. Its creditors were clamorous, a receiver was threatened, and the danger imminent. Rosser himself was much indebted, though the extent of his indebtedness does not appear in the record. Rosser had caused the agreement to be prepared by his counsel at Charlottesville, Va., where or near which place he resided, and carried it with him to Russell county, where was Banner's home, and at which Rosser arrived after nightfall. The next day he explained the situation to Banner and advised him to consult his counsel about signing the agreement. As they approached the railroad depot at St. Paul, Mr. Gent, a lawyer residing in the same county with Banner and well known to him, happened to be there, and when Banner saw him he observed to Rosser that he would just as soon consult Gent as his regular counsel, Mr. Routh, and did so. Rosser explained the situation of affairs to Gent in the presence of Banner, and exhibited to him the agreement he had caused to be prepared. He then retired and Banner and Gent conferred together, with the result that Gent advised Banner to sign the agreement, which he did, and the same was witnessed by Gent and another person. It was urged that Gent was not employed by Banner as his counsel in the matter, and that Gent did not consider himself as his counsel when advising him as to the agreement. It is conceded, however, that he was reputable and presumed competent to advise Banner in the premises. It may not be doubted that he advised Banner as conscientiously as if he had been regularly employed as counsel and been paid a fee for his advice.

The testimony tends to show that Banner was not a man of much education, but that he had always transacted his own business, managing his large farm, and trading in cattle to a considerable extent without question from any source of his capacity to do so. In the execution of the agreement of November 13, 1891, he did not rely solely on his own judgment, but acted only after he had taken the advice of an experienced lawyer. The confidential relation that existed at one time between the parties, but which had been completely dissolved nearly two years before, is not a ground to avoid the contract entered into under the circumstances proved.

It was further urged in this connection that although the fiduciary relation formerly existing between them no longer subsisted, on March 20, 1890, when the land was sold and conveyed to Rosser, yet its influence still remained, and the confidence reposed by Banner in Rosser was so great as to amount to undue influence in the execution of the agreement. The depositions of a number of persons were taken to prove that Banner reposed great confidence in Rosser, and that he was by nature prone to confide too much in those whom he liked. There was, however, an absence of evidence that his execution of the agreement was the result of undue influence on the part of Rosser, or that it was not the free, voluntary act of Banner. The latter did not pretend in his testimony that he reposed blind confidence in Rosser, but only that he regarded him as an honest and upright man, who had always treated him fairly and justly in the dealings between them, and as one who would not deceive him.

The next ground of objection to the agreement was that it was induced by misrepresentation and fraud. In support of this objection it was asserted that Rosser represented to Banner that the Minneapolis Improvement Company, in which the title to the land was vested, was unable to meet its debts, and was threatened by some of its creditors with the appointment of a receiver, which, if done, would be likely to result in pro-

tracted litigation and his debt be jeopardized, as he had been advised by counsel that the vendor's lien reserved by Banner in the deed of March 20, 1890, was invalid in consequence of some defect, and that he, Rosser, was insolvent.

The testimony of Banner, though vague, does tend to show that these or similar representations were made by Rosser, and the testimony proves that the representation as to the financial condition of the Minneapolis Improvement Company was correct.

As to the alleged representation that Rosser asserted that if Banner sued him he would have to make an assignment, or that he was insolvent, it is not supported by the testimony. Banner deposed that he so understood Rosser, but the latter denied that he made any such statement. Gent testified that he did not hear Rosser say that he would have to make an assignment, but that, in discussing the matter, he merely stated to Banner that if he were to sue him to recover those large notes and thereby bring his other creditors on him he could not say that in that event he would be good for the notes, and not that he did not have ample property to pay his debts.

It was admitted by Rosser that he told Banner that he had been advised by able lawyers that the vendor's lien was defective, and could not be enforced, and Gent, with whom Banner advised, had previously examined into the question as counsel for creditors of the Minneapolis Improvement Company and reached the same conclusion. Whether it really constituted an encumbrance upon the land and was capable of being enforced against it was a question far from being free from difficulty. The deed of November 27, 1888, was on its face an absolute conveyance of the land by Banner to Rosser, though the latter, as between him and Banner, took it subject to the contemporaneous collateral agreement. As heretofore stated, Rosser, by deed of March 5, 1889, conveyed it to the New South Mining and Improvement Company, and it conveyed the same by deed of June 25, 1889, to the Minneapolis

Improvement Company, the conveyance being duly recorded. It thus appears that the title to the land, when Banner sold and conveyed it absolutely to Rosser in his own right by the deed of March 20, 1890, wherein the vendor's lien was reserved, was in the Minneapolis Improvement Company. Whether the vendor's lien could be effectively reserved by Banner on the land and enforced against it under all the circumstances, when the title thereto was vested in, and the right of property therein claimed by a third party under previous conveyances from his vendee under the authority of the deed of November 27, 1888, was a question involved in so much difficulty and doubt as to make it a fair subject of compromise, and to constitute it a strong inducement to the settlement made by the agreement of November 13, 1891. Whether the lien was valid and susceptible of enforcement or not, it is not material to decide. The parties themselves have settled the debt, and their settlement, as against the charge of misrepresentation and fraud, must stand. So far as the evidence shows, the parties acted in good faith, and a settlement made under the circumstances disclosed by the record will not be disturbed. *Moore* v. *Fitzwater*, 2 Rand. 442; *Lee* v. *Harlow*, Treas., 75 Va. 39; *Zane* v. *Zane*, 6 Munf. 406; and 2 Leading Cases in Equity, Pt. 2, p. 1703.

The further objection was made that the agreement was unconscionable. This objection was founded upon the ground that Rosser was solvent, and that the unpaid notes could have been made out of him, and that Banner agreed to surrender them for the residue of the land still owned by the Minneapolis Improvement Company, which, by reason of the division into lots, streets, and alleys, the grading thereof, and the ownership of lots which had been bought from the company by various persons, situate here and there in its midst, so affected the land which Banner was to get back in discharge of the notes, as to make it comparatively valueless.

The witnesses were greatly at a loss to express any opinion

as to its value. If the scheme of building a town or city should in the future be revived and succeed, the land so purchased back would be of very great value, but if not, the ownership of lots here and there in its midst, if the owners should not abandon them, would seriously affect its value for farming and grazing purposes.

In considering this objection it cannot be overlooked that the whole scheme was a speculative venture, in which both Banner and Rosser engaged, fully conscious of its nature and the risks attending it, but which they were willing to incur in the hope of the great gains it held out to them in the event of success. The scheme, in consequence of the universal financial depression that quickly followed its inauguration, failed, and the question with Banner was when he executed the agreement what was the best course to pursue, what it was best for him to do. He was confronted with the fact that the Minneapolis Improvement Company, in which was vested the legal title to the land, was in great straits, if not insolvent, with the threat of being placed in the hands of a receiver impending over it with the fact that there was grave doubt, to say the least, as to the efficacy of his supposed vendor's lien, and with the possibility of not being able to make the notes out of Rosser, even if he desired to do so out of the originator of the scheme whose sole object had been by great enterprise and bold speculation to make money for them both. He decided to accept the offer to convey back to him the unsold lands if he would release the balance of the purchase money, and signed the agreement. Can it be said that he acted unwisely, or that his conduct was not that of a prudent business man ? But whether wise or unwise the agreement, in view of the testimony that he had the capacity to make it, and that it was his own free voluntary act, cannot be impeached, however unreasonable or imprudent it may now seem to others. *Greer* v. *Greers*, 9 Gratt. 330.

The testimony shows that the lands of Banner, the whole 904 acres, were not worth, according to the highest estimate,

over $40,000.   The average estimate of his own witnesses was
$37,850.   They were assessed for taxation at $5,616, and it
was thought would probably have brought $25,000 at a sale by
the court for the payment of the judgment liens, which was
imminent when Rosser raised the money to pay them off.   By
the agreement of November 13, 1891, Banner was to get back
the whole 904 acres less 279 acres which had been sold off in
lots.   All the judgments against him had been paid, and per-
haps some other debts amounting to $20,400, and he had also
received in money $20,000.   The result was that he had
already received in payment of his debts and in cash upwards
of $40,000, more than the entire lands were worth, and was to
get back besides more than two-thirds thereof.   So far from
being an unconscionable contract the result would rather indi-
cate that Banner had displayed good judgment and decided
business capacity.

It was also objected that the certificate of acknowledgment
to the deed of December 2, 1891, from the Minneapolis Im-
provement Company to Banner, filed with the answer of
Rosser and made in pursuance of the agreement of November
13, 1891, is defective.   The objection is not well founded.   The
deed bearing date December 2, 1891, was signed by the Min-
neapolis Improvement Company by Thomas L. Rosser, presi-
dent, with the corporate seal affixed, and the certificate of the
notary states that " Thomas L. Rosser, president, whose name
is signed to the writing hereto annexed, bearing date on the
2d day of December, 1891," acknowledged the same before
him in his county.   It identifies the subscriber, specifies the
writing subscribed, states the capacity in which he executed it,
and certifies his acknowledgment thereof.   The certificate con-
tains all that is necessary.   See *Merchants Bank* v. *Goddin,* 76
Va. 506.*

It was urged in argument that if Banner was not entitled to

*Note by Reporter.—The form of acknowledgment by corporations is
now prescribed by Acts 1895–'6, p. 542.

have the land in controversy sold to satisfy the lien reserved in the deed of March 20, 1890, then the court should annul all deeds and contracts made subsequent to the deeds of September 24 and October 24, 1887, and restore the parties to their original rights under those deeds. This position is wholly untenable. The agreement of November 13, 1891, was intended by the parties to be an absolute settlement of the debt now here in litigation, and being valid, this was its effect. It was a voluntary adjustment by the parties of their rights, final in its nature, and by it they must abide.

The Circuit Court did not err in dismissing the original and amended bills of the complainant, but in doing so, provision should have been made in the decree for the delivery by its clerk to Banner of the deed from the Minneapolis Improvement Company to him of December 2, 1891, which was filed with the answer of Rosser. The decree will be amended in that respect, and, as so amended, affirmed.

*Amended and Affirmed.*