98  737
99   60
99  527

# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## DINGUS AND OTHERS v. MINNEAPOLIS IMPROVEMENT CO. AND OTHERS.

### DECEMBER 6, 1900.

#### Absent, Phlegar, J.*

1. VENDOR'S LIEN—*Equitable Estate—Reconveyance—Estoppel.*—A vendor's lien may be reserved on the face of a deed conveying an equitable as well as a legal estate, and, in the absence of fraud or injustice, the vendor may take a reconveyance of the property conveyed in discharge of the balance of the purchase price. If, however, such reconveyance be set aside, the vendor's lien, in the absence of such fraud or injustice, will be revived and enforced for the benefit of the vendor. The doctrine of estoppel has no application to such a case.

2. JUDGMENTS—*Extent of Lien—Interest of Debtor—Case in Judgment.*— Where statutory enactments do not interfere, only the actual interest of the judgment debtor in real estate can be subjected to sale to satisfy judgments against him. In the case in judgment, although the judgment debtor held the legal title to land, it was charged with a trust which is paramount to the rights of its judgment creditors.

Appeal from a decree pronounced by the Circuit Court of Russell county in a suit in chancery, wherein the appellants were the complainants, and the appellees were the defendants.

*Affirmed.*

The opinion states the case.

*Burns & Ayres,* and *J. C. Gent,* for the appellants.

---

*This case was argued and submitted before Judge Phlegar qualified. ·

*White & Penn,* and *W. W. Bird,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

In 1887 George Banner was led to believe that his farm, lying on the south side of Clinch river, in the county of Russell, just opposite the point at which it was expected that the Clinch Valley Branch of the Norfolk and Western railway and the Charleston, Cincinnati and Chicago railroad would make a junction, could be sold off into lots and blocks as a site for a town. To this end, Banner, on the 24th day of September, 1887, conveyed the farm to T. L. Rosser, president of the New South Mining and Improvement Company, according to certain boundaries, the number of acres to be thereafter definitely ascertained by a survey. The deed recited that it was made subject to certain conditions and limitations therein expressed, and that those were the main inducements of the conveyance. The conditions and limitations referred to are fully set out in the opinion of this court in *Banner* v. *Rosser,* 96 Va. 238, and need not be repeated here.

On October 24, 1887, a further deed was made by Banner to Rosser, president as aforesaid, perfecting the previous conveyance of September 24, 1887, with respect to the boundaries of the land as the same had been ascertained by survey, and fixing the number of acres at 868, more or less; the conveyance then made being subject to all the conditions, provisions, etc., of the prior deed of September 24, 1887.

The New South Mining and Improvement Company, in obedience to the provisions and stipulations of the said deeds, surveyed and laid out the land as a town site, divided it into town lots, streets and alleys, built a bridge across Clinch river, and got ready to dispose of the lots to the public, when it was ascertained that there were a number of judgments against Banner, aggregating a large amount; that there was a suit

pending to enforce the lien of these judgments against the lands; that an account of the liens had been taken, and the cause made ready for a decree of sale, which prevented a clear title from being made to the lots, and interfered with their sale. In order to save the lands from a forced sale by the court, and to secure to Banner the gains, which it was expected would be realized from the scheme provided for under the deeds of September 24, and October 24, 1887, a new arrangement was made, whereby Rosser, as president of the New South Mining and Improvement Company, on November 27, 1888, conveyed the land back to Banner, and he in turn reconveyed it on the same day to Rosser in his own right; a collateral agreement being contemporaneously executed by them, to the effect that Rosser was to raise the sum of $15,000, which, it was supposed, would be sufficient to discharge the liens on the land, the money to be placed by Rosser in the hands of a third party to be applied by him to that purpose, and if any of it was left, it was to be paid over to Banner. This collateral agreement further provided that Rosser was to sell off the land in lots or blocks for a town or city; the proceeds of sale to be equally divided between Banner and himself, subject to Rosser's right to be first reimbursed out of Banner's half for the $15,000 to be advanced by him to pay off the liens. The time given Rosser, by the agreement, within which he was to raise the $15,000 and pay off the liens on the land was twice extended by Banner, and on March 5, 1889, Rosser, as a means of raising the money, for a nominal consideration, conveyed the land to the New South Mining and Improvement Company, of which he was still the president, and on June 25, 1889, it, in consideration of $5, and the issuance to the New South Mining and Improvement Company, of all the stock of the Minneapolis Improvement Company (except 500 shares of the par value of $10 each), conveyed the same to the Minneapolis Improvement Company, of which Rosser was also the president, and which company

was incorporated for the express purpose of pushing forward the scheme provided for in the first two deeds to Rosser, as president of the New South Mining and Improvement Company. The consideration for the reconveyance by Banner to Rosser of November 27, 1888, set out in the deed is $5, and "other good and valuable considerations," referring, of course, to the collateral agreement contemporaneously entered into by the parties. All of the deeds referred to were duly recorded, but the collateral agreement executed contemporaneously with the deed of November 27, 1888, was not recorded. Under this state of things, as was said in the opinion in *Banner* v. *Rosser,* *supra,* these parties bore to each other confidential relations.

This state of things continued until March 20, 1890, when Banner sold and conveyed to Rosser, in his own right and without any stipulations and conditions, the lands embraced in the former deeds referred to, and certain other small parcels, the whole being 904 acres, for the sum of $90,400, upon the terms set forth in the deed, a vendor's lien being expressly reserved to secure the payment of the deferred payments of the purchase money. This deed duly recorded refers specifically to all of the previous conveyances and contracts made between Banner and Rosser, with all and singular their conditions, reservations, and limitations, and in consideration of the sale then made, by mutual agreement *sets aside, rescinds, and annuls them,* whereby, the past relations of trust and confidence between the parties were terminated, and the new relation of debtor and creditor created. *Banner* v. *Rosser, supra.*

It having become apparent that a further sale of the lots and blocks into which the lands had been divided was impracticable, Banner, on November 13, 1891, agreed with Rosser, president of the Minneapolis Improvement Company, to purchase and take back the unsold lots and blocks of lands in satisfaction and discharge of the two notes of $25,000 each, executed by Rosser for the deferred payments of the purchase

money for the land then remaining unpaid and secured by the vendor's lien reserved in the deed of March 20, 1890, these notes to be cancelled and surrendered by Banner when Rosser delivered to Banner a deed reconveying to him the unsold lots and blocks.

This agreement was entered into by Rosser pursuant to a resolution passed by the Minneapolis Improvement Company June 15, 1891, which is as follows:

"*Resolved*, That the Board of Directors be, and are hereby, authorized to settle the balance of indebtedness due to George Banner for the purchase of his land conveyed to this company by reconveying to him such number of lots and blocks as may be agreed upon between him and the president of this company, and now remaining in the possession of the company."

On December 1, 1891, the Board of Directors of the company, by resolution, approved and ratified the agreement made by Rosser, its president, with Banner, of November 13, 1891, and authorized and directed a proper deed of conveyance to be executed and delivered to Banner in accordance with the agreement. December 2, 1891, the Minneapolis Improvement Company executed a deed conveying the remaining lots and blocks of land as agreed upon to Banner. The deed sets forth: " That in consideration of the sum of $5, and in full satisfaction and payment of the entire balance of purchase money due or to become due to said George Banner on land sold by him to Thomas L. Rosser, and a part of which land was conveyed by Thomas L. Rosser to the New South Mining and Improvement Company, which company conveyed to the party of the first part, the receipt of which said purchase money is hereby acknowledged by the said George Banner, the said party of the first part, the Minneapolis Improvement Company, doth bargain, sell, grant and convey unto the said George Banner, with

general warranty, the following property." Then follows a description of the property.

When this deed was tendered to Banner he declined to accept it, and insisted upon the payment of the purchase money notes secured to him by the vendor's lien reserved in the deed of March 20, 1890, on the ground that the agreement entered into by him with Rosser November 13, 1891, was obtained by fraud, deceit and undue influence. As a result, the suit of *Banner* v. *Rosser, supra,* was instituted and ultimately decided by this court, and this court, as did the lower court, sustained the validity of the deed of March 20, 1890, and the agreement of November 13, 1891, and held that that agreement was an absolute settlement of the purchase-money lien reserved to Banner in the deed of March 20, 1890. The decree appealed from by Banner was, however, amended so as to direct the clerk of the lower court to deliver to Banner the deed from the Minneapolis Improvement Company to him of December 2, 1891, and as so amended affirmed.

At the time of the execution of the deed of March 20, 1890, and of the deed of December 2, 1891, there were no judgments against the Minneapolis Improvement Company, but in August, 1892, J. L. Dingus and others obtained judgments against the said company, which were duly·docketed in the clerk's office of the County Court of Russell county, and in July, 1896, instituted a suit in chancery in the Circuit Court of Russell county against the Minneapolis Improvement Company, and in July, 1897, while the case of *Banner* v. *Rosser, supra,* was still pending in this court, filed an amended bill, making the executor, devisees, and heirs at law of George Banner, who had died, parties defendant to their original bill, the object of which was to subject to the payment of the judgments of the complainants against the Minneapolis Improvement Company the lands afterwards conveyed by the said company to George Banner by the deed of December 2, 1891, and upon which Banner had

reserved his vendor's lien of March 20, 1890. A decree was entered in that suit at the November term, 1897, of the Circuit Court appointing a receiver of the court for the purpose of renting out the lands for a term of fourteen months, and postponing the adjudication of the merits of the cause until the case of *Banner* v. *Rosser, supra,* was decided by this court. From that decree, the executor, devisees and heirs at law of George Banner, deceased, appealed to this court, and the decree was set aside and annulled. *Banner's Exor.* v. *Dingus & als.,* 1 Sup. Ct. Rep. 337.

On the 30th of October, 1899, after the decision of this court in *Banner* v. *Rosser, supra,* the said cause of *J. L. Dingus & als.* v. *Minneapolis Imp. Co. et als.* came on to be heard finally in the Circuit Court of Russell county, and the court held "that the right of the widow, devisees and heirs at law of George Banner, deceased, to the lots and land conveyed to George Banner by the Minneapolis Improvement Company by deed of December 2, 1891, pursuant to the agreement between George Banner and T. L. Rosser of November 13, 1891, is paramount and superior to any lien of any creditor of the Minneapolis Improvement Company in this cause, as to said lots and lands," and dismissed the cause as to the executor, widow, devisees and heirs at law of George Banner, deceased, with costs. From this decree the complainants, J. L. Dingus and others, obtained an appeal to this court.

The contentions of appellants are, first, that as the title to the lands in question was in the Minneapolis Improvement Company, and not in George Banner, when he executed and delivered to Rosser the deed of March 20, 1890, no vendor's lien to secure the purchase money for the land was or could have been reserved to Banner; and, second, that as Banner failed to record his deed from the Minneapolis Improvement Company of December 2, 1891, until after the appellants had docketed their judgments in the clerk's office of the County

Court of Russell county, the lien of their judgments is paramount to any interest in the lands acquired by George Banner, or those claiming under him, by the deed of December 2, 1891.

The trust and confidential relations between Rosser and Banner referred to in the opinion in *Banner* v. *Rosser, supra,* were: Rosser held the legal title to the lands, and Banner the equitable, beneficial interest therein and the possession thereof. The legal title held by Rosser was charged with the trust reposed in him by the deed of November 27, 1888, and the collateral agreement therewith, of all which, the New South Mining Company and the Minneapolis Improvement Company successively acquiring the legal title from Rosser, had notice. This is nowhere denied. So that when the new arrangement of March 20, 1890, was entered into, the land as to which the Minneapolis Improvement Company held the legal title was not paid for, and we can see no reason whatever why Banner could not convey his equitable estate or interest in these lands and other lands, as to which he held an absolute estate in fee, to Rosser, and reserve on the face of the conveyance a vendor's lien as a security for the purchase money. This deed was practically a deed to the Minneapolis Improvement Company. It acquiesced in the making of it, recognized the vendor's lien reserved in the deed, and paid a part thereof. If this vendor's lien was valid, whether the deed of December 2, 1891, was ever recorded or not, is a matter of no consequence to the appellants, in view of the facts in this case, as we shall see. Of course, as appellants contend, if Banner had no title or interest in the lands conveyed by the deed of March 20, 1890, he could reserve no vendor's lien on them for his purchase money. But the learned counsel for appellants, citing Jones on Liens, section 1069, in support of their contention, seem to have overlooked the first part of the section, where the author, citing a number of cases as authority, says: " It has been held that this lien may arise upon the sale of a mere equitable interest. The lien may

exist in favor of an equitable owner. Thus a person who has purchased and paid for real estate, and has a right to a deed in his own name, upon selling and conveying it to a purchaser before obtaining the legal title, has a right in equity to a vendor's lien for the purchase money."

True, the learned author is speaking of the implied vendor's lien, where the land was conveyed prior to our statute, now section 2474 of the Code, abolishing the implied vendor's lien for purchase money, and providing that no such lien should exist unless expressly reserved on the face of the conveyance. But that does not alter the case, and if the lien is expressly reserved on the face of the conveyance, as required by the statute, it is as valid as to the estate or interest in the land conveyed as the implied vendor's lien for purchase money would have been before the enactment of the statute, whether the estate in the land conveyed be an absolute fee simple title or a mere equitable estate or interest therein. *Patterson* v. *Grottoes Co.*, 93 Va. 578.

When the deed of March 20, 1890, was made by Banner to Rosser, the naked legal title to a part of the land conveyed was in the Minneapolis Improvement Company, acquired by it with full knowledge of the trusts upon which the title was conveyed to their immediate grantor, and the equitable, beneficial estate in the land, and the possession thereof in Banner, for which he had not been paid. This equitable estate in the land, and that part of it as to which the legal title was not in the Minneapolis Improvement Company, being in Banner, he had the right to convey to Rosser or to any one else, and expressly reserve on the face of the conveyance a vendor's lien to secure the payment of his purchase money therefor. At that time, the judgments of appellants asserted in this cause had not been obtained, or their debts contracted, upon which the judgments were obtained. There is no pretence that Banner, by his dealings with the Minneapolis Improvement Company, or Rosser

acting for it, perpetrated or attempted a fraud upon any one, and the charge is not made that the lands he agreed to take back from the Minneapolis Improvement Company in satisfaction of his vendor's lien. were of greater value than the amount of purchase money due him and secured by his vendor's lien, then remaining unpaid. In fact, the proof is conclusive that the value of the lands taken back by Banner was not in excess of half the amount of purchase money due him. This was one of the grounds. upon which Banner sought to avoid his agreement of November 13, 1891. If he failed to get the land in satisfaction of his vendor's lien thereon, he or those claiming under him are not estopped from claiming the benefit of the lien. Such an estoppel only arises when the conduct of the party estopped is fraudulent in its purpose or unjust in its results, and can only be called into life for the prevention of fraud, or the redress of injury. *Webb* v. *City of Alexandria,* 33 Gratt. 168; *Borst* v. *Nalle,* 28 Gratt. 437; *Mauzy* v. *Sellars,* 26 Gratt. 641; 2 Smith's Leading Cases (Amer. Ed.), 642-37.

In the case of *Fleece* v. *O'Rear,* 83 Ind. 200, cited by Jones on Liens, section 1069, Fleece sold to O'Rear certain lots of land, O'Rear executing to Fleece his note for the purchase money, but received no deed then for the land. Afterwards, O'Rear, out of money that came into his hands as administrator of his wife's father's estate, which he supposed belonged to her as distributee of the estate, paid off his purchase-money note for the land held by Fleece, secured by the implied vendor's lien, and caused the land to be conveyed by Fleece to Mrs. O'Rear. It turned out that the money had to be refunded by Fleece to meet demands of creditors holding claims against Mrs. O'Rear's father's estate, there being no other assets in the administrator's hands to meet them, and the court, although the purchase money note had been surrendered by Fleece, held that the purchase money was, under the circumstances, then unpaid to Fleece, and he could enforce his vendor's lien on the

land, the opinion saying: " The fact that the appellant (Fleece) was only the equitable owner of the land, did not deprive him of the right to enforce a vendor's lien for the purchase money; * * * that under the circumstances, Mrs. O'Rear held the land, burdened with the vendor's lien, precisely as though no payment of the purchase money had been attempted to be made."

Before the enactment of the statute abolishing the implied vendor's lien for purchase money, the vendor of an equitable right or title to land was entitled to enforce his vendor's lien for purchase money, whenever, under the same circumstances, the vendor of the legal title could assert an equitable lien for such purchase money.  The same principle and reason apply. *Board* v. *Wilson*, 34 West Va. 617.

Suppose in the case at bar, that the deed of December, 1891, had never been executed or delivered to Banner by the Minneapolis Improvement Company, or the agreement of November 13, 1891, entered into by Rosser acting for and with the authority of the Minneapolis Improvement Company, would appellants have been in any worse or better position than they are now?  Would their judgments have been of greater or less effect than they were after the deed of December 2, 1891, was delivered to Banner?  In either case, their judgments would have been a lien on the lands in question from their docketing, but subject to the vendor's lien of Banner for his unpaid purchase money.  In other words, the failure to record the deed did not operate to create in the Minneapolis Improvement Company any greater estate in the land than it had when the judgments were docketed.  The larger portion of Banner's purchase money, amounting to double the value of the land, or more, was still unpaid, when he agreed to take back that portion of the land which had not been sold off in lots or blocks, in satisfaction of the purchase money due him from the Minneapolis Improvement Company as it recognized, and no reason is conceivable

why the parties in interest could not settle this indebtedness as they did by the agreement of November 13, 1891, and the deed made pursuant to the agreement. At that time, also, appellant's judgments had not been obtained, and, as we have seen, the vendor's lien of Banner being valid, no injury whatever resulted to appellants by the settlement of the purchase money due Banner which the parties in interest then made. If that settlement is not effectuated, then Banner's vendor's lien remains in force, and appellants are still not injured. *Fleece* v. *O'Rear, supra.*

Nothing is better settled in Virginia than that where statutory enactments do not interfere, only the actual interest of the judgment debtor can be subjected to sale to satisfy judgments against him. *Floyd, Tr.* v. *Harding,* 28 Gratt. 401; *Borst* v. *Nalle, Ibid.* 423; *Summers* v. *Darne,* 31 Gratt. 800; *Coldiron* v. *Asheville Shoe Co.* 93 Va. 364; 1 Black on Judgments, sec. 445, and authorities cited.

In the view that we take of the case, it is unnecessary to review the authorities cited for appellants in support of their contention that by reason of the failure of Banner to record the deed of December 2, 1891, the deed is void under the registry laws, and appellants are entitled to enforce their judgment liens against the lands thereby attempted to be conveyed, as we do not think the authorities applicable.

As was said by the learned judge of the Circuit Court in his opinion in this case, made a part of the record: " It would, indeed, be remarkable if, after one whose lands were admitted by him to be bound by a vendor's lien, had discharged the lien by a reconveyance of a portion of the lands, he could still get his other debts paid to the extent of the value of the lands, and at the expense of the grantee who had only been paid in the lands upon which his purchase money therefor was charged."

The decree appealed from is affirmed.

*Affirmed.*