TOLEDO COMPUTING SCALE CO. v. COMPUTING SCALE CO.

(Circuit Court of Appeals, Seventh Circuit. April 15, 1913.)

No. 1,934.

1. PATENTS (§ 21*)—INVENTION—SUBSTITUTION OF MATERIALS.

Lessening the weight of a part of a machine, while a change in degree, is not necessarily merely a matter of degree; and, where it converts a machine which is a failure into one which is a success and is the first practically efficient and reliable machine of the kind, something more is involved, and the change is one of kind resulting in a new mechanism, which constitutes "invention."

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 23; Dec. Dig. § 21.*

For other definitions, see Words and Phrases, vol. 4, pp. 3749–3754.]

2. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—COMPUTING SCALE.

The Smith reissue patent, No. 11,536 (original No. 545,616), for a computing scale, *held* valid and infringed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. PATENTS (§ 328*)—INVENTION—COMPUTING SCALE.

> The Smith patent, No. 597,300, for a computing scale, claim 2, *held* void for lack of invention.

4. ACKNOWLEDGMENT (§ 38*)—CERTIFICATE—ASSIGNMENT BY CORPORATION.

> The assignment of a patent by a corporation should show in the acknowledgment that the persons signing as officers were personally known to the notary, that they stated on oath that they were such officers, and were authorized by the board of directors to execute the instrument, that the corporation had no seal, or that the genuine seal was attached, and that they acknowledged the instrument to be the free act and deed of the corporation.

> [Ed. Note.—For other cases, see Acknowledgment, Cent. Dig. §§ 217–220; Dec. Dig. § 38.*]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; Kenesaw M. Landis, Judge.

Suit in equity by the Computing Scale Company against the Toledo Computing Scale Company. Decree for complainant, and defendant appeals. Reversed.

Appellant (defendant) was adjudged to be an infringer of claims 5 and 6 of reissued patent No. 11,536, April 28, 1896, and of claim 2 of patent No. 597,300, January 11, 1898. Each was issued on application of Albert U. Smith, for improvements in automatic computing scales.

As the scales of complainant and defendant are identical so far as the claims in suit are concerned, the questions to be considered are the patentable novelty of the claimed improvements, the validity of the reissue, and the sufficiency of complainant's proof of title.

Prior art facts of record, which are deemed controlling, are stated in the opinion.

Claims 5 and 6 of the reissued patent are as follows:

"5. An indicator-drum for weighing mechanism, consisting of a spindle provided with a plurality of skeleton frames of light material and secured to said spindle, and having secured to their peripheries a sheet of paper forming a cylinder.

"6. An indicator-drum for weighing mechanism consisting of a spindle provided with a plurality of skeleton disks or frames of thin aluminium having a sheet of paper extending around and secured to their peripheries to form a cylinder."

In applying for the reissue, Smith made no changes in the drawings, the descriptions, or the four claims of the original patent, No. 545,616, September 3, 1895. Application for the reissue was made on January 27, 1896, and the desired change consisted in adding claims 5, 6, and 7 to the original claims. Claim 2 of the original (reproduced in the reissue) was the only one that related to the subject-matter of reissue claims 5 and 6, and it reads as follows:

"2. The combination of the indicator-drum constructed of thin skeleton frames of a very light material, the periphery of said drum being formed of a sheet of paper having the divisions of the weight-scale and other numerals printed thereon, the pinions carried by the shaft of said drum, adjustable conical bearings wherein said shaft is journaled, the cross-bar *c* having a suspending-clip secured thereon, the headed draft-pins supported loosely within the notched ends of the cross-bar *c* after the manner of a stirrup connection, the bow-shaped clips in the ends of the draft-pins, the springs between the coils of which said clips are inserted, whereby the tension on said springs may be altered as described, the draft-rods *k*, the yoke *n* whereby said rods are connected, the cross-rod *a'* to which the rack-bars are pivoted and whose ends are notched and embrace said draft-rods so as to be capable of sliding

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

thereon, a ring from which the scale-pan is suspended, and suitable adjusting connections between the yoke *n* and said cross-rod *a'*, substantially as described."

Part of the description of Smith's invention as set forth in his original application is in these words:

"The object of my invention is to provide scales of this description which shall be extraordinarily sensitive to weights of small amount and to accurately register the same. A further object of my invention is to provide an adjusting mechanism by the use of which the springs employed may at all times be held at uniform tension, or, in other words, when said springs have become weakened or distorted by long usage the adjusting mechanism may be employed to restore a proper tension to said springs; also, said adjusting mechanism may be used to set the scales at a 'balance' after the weighing-pan is suspended therefrom, and the difference in weight of various kinds of weighing-pans may be compensated for by the use of this mechanism."

And in order to accomplish the first of the stated objects of his invention, Smith prescribed:

"It is a very essential feature that the indicator-drum in scales of this nature should be made of very light material, for the reason that if it be not so made the sensitiveness and accuracy of the scales will be more or less affected. For instance, heretofore in scales of this character if a given quantity is weighed successively a number of times it will be found that said scales scarcely ever indicate the weight of such quantity twice exactly the same; there always being some slight variation in the amount registered. This is in a great measure due to the fact that the more the actual weight of the indicator-drum itself the greater must be the force to operate it, and in order to overcome this disadvantage I have constructed the drum of thin skeleton frames of aluminium, while the periphery is formed of a thin sheet of paper pasted to the frames. In this way I have secured a structure that is so light that the force necessary to operate it is almost insignificant."

So far as it needs consideration, the reissue statute reads:

"Sec. 4916. Whenever any patent is inoperative or invalid, by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new, if the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, the Commissioner shall, on the surrender of such patent and the payment of the duty required by law, cause a new patent for the same invention, and in accordance with the corrected specification, to be issued to the patentee," etc. U. S. Comp. St. 1901, p. 3393.

Claim 2 of the second patent is this:

"2. In a scale of the character described, the combination with a casing having openings in opposite sides but not opposite each other, of a revoluble drum provided with a series of columns of figures representing dollars and cents and two independent columns of figures representing weights in pounds and ounces, one column of the latter being arranged to be read from the same side of the casing as the figures representing dollars and cents, and the other column of weight-figures being arranged to be read solely through the opening in the opposite side of the casing, the figures representing dollars and cents not being visible from said opposite side, the openings in the opposite sides of the casing being covered with transparent material having stationary pointers thereon adapted to correspond with each other in their indications of figures so that when the pointer on one side indicates one figure in one column, the other pointer on the other side will indicate exactly the same figure in the other column."

Respecting the title, the only difficulty arises in connection with an assignment from the E. C. Smith Company, a corporation, and another assignment of identical character. Signature was as follows:

"The E. C. Smith Company,<br>
"Chas. R. Luce, Pres't,<br>
"William G. Bell, Treas."

No corporate seal was affixed. No recital appears that Luce was president and Bell treasurer, or that they as such officers were authorized to execute

the assignment in the name and on behalf of the corporation. An acknowledgment, in the following words, was attached.

"State of Massachusetts, County of Suffolk, ss.:

"March 8th, 1899, personally appeared before me the persons known to be Charles R. Luce and William G. Bell, who executed the above instrument in my presence, and acknowledged the signing of the same to be their voluntary act and deed.                              [Seal.]   C. F. Brown, Notary Public."

Edward Rector and Frank Parker Davis, both of Chicago, Ill., for appellant.

Walter A. Scott and Carl A. Richmond, both of Chicago, Ill. (Thomas F. Sheridan and George L. Wilkinson, both of Chicago, Ill., of counsel), for appellee.

Before BAKER and KOHLSAAT, Circuit Judges, and WRIGHT, District Judge.

BAKER, Circuit Judge. In this record the greatest thing is the fact that Smith put in the hands of the world's vendors of commodities the first usable automatic computing scale. Long before Smith's time, and the length of the interval is a fact of considerable weight, the paper art (Phinney's patent, No. 106,869, in 1870, and Babcock's, No. 421,805, in 1890) had professed to teach practical scale-makers how to build automatic computing scales. But when those disclosures were given material bodies, failure was the result. Just as Smith said in his specification, they would not work twice alike, they were not reliable. To-day in the light of what Smith accomplished it may be easy enough to see exactly where the difficulty lay; but this record proves that during the long interval between Phinney and Smith some of the brightest and most skillful men in the scale business, realizing what a tremendous commercial success was awaiting a reliable automatic computing scale, did not draw from Phinney's patent, nor from elsewhere in the prior art, nor from their own experience as practical mechanics, nor from their own ingenuity, any conception of the necessary means. In the prior art were combinations of indicator-drums and weighing mechanisms. But the cause of their failure might lie at any one of many points. It remained for Smith to discover that the most essential thing in reorganizing the old elements was to make the drum so light that its interference with the weighing operation would be eliminated. And he embodied that conception or "happy thought" in the new means described in the patent and covered by the claims of the first patent in suit. The evidence in this record (and we have considered, though we have not thought it necessary to discuss, the remoter references to the nonautomatic art), instead of overcoming, has strongly fortified the presumption of invention.

[1] Defendant insists, however, that making the drum lighter was merely a matter of degree. Of course the lessening of weight is a matter of degree; but it is not necessarily merely a matter of degree. If the change converts failure into success, something more than a matter of degree is involved. Unreliable automatic computing scales, in the practical art, are no scales at all. A reliable automatic scale was a new mechanism, a creation, just as in the aspirin case (Kuehm-

sted v. Farbenfabriken of Elberfeld Co., 179 Fed. 701, 103 C. C. A. 243) this court held that the reduction of the amount of impurities in a compound theretofore known to chemists, whereby a deleterious substance was converted into a valuable medicine, was not merely a change of degree, but was a change of kind, producing a new article of commerce.

[2] A further insistence is made that the patent is void for indefiniteness, in this, that the degree of thinness of the aluminum frame and of the paper cylinder are not specified. In the quoted part of the specification Smith substantially told those skilled in the art to make the skeleton frame to the last degree of thinness that would support the cylinder, and to make the cylinder of the very thinnest paper they could then or thereafter find in the market, which would be stiff enough to retain its shape when attached to the frame. This, it seems to us, was very clear and definite instruction.

It is also contended that the reissue patent was improperly granted. In McDowell v. Ideal Concrete Machinery Co., 187 Fed. 814, 109 C. C. A. 574, this court considered the requirements of the reissue statute, and found that the new claims in that case were invalid because they were not for "the same invention" that was disclosed as the applicant's in his original description. But here the quoted part of the applicant's original description shows that the idea of the light drum, the purpose to be accomplished by it, and the means by which it was to be produced, constituted the principal part of his invention. But it was not covered except in original claim 2, and there only in combination with particularly described weighing mechanism. So, under the original patent, if any one should alter the weighing mechanism, he could avoid claim 2 and thus appropriate the largest part of what Smith had stated to be his invention. Inasmuch as the value of the drum invention was not dependent upon its association with the specific weighing mechanism provided by Smith, he would have been clearly entitled, in our judgment, to have included reissue claims 5 and 6 in his original specification. These claims cover the combination of the Smith "indicator-drum" with any "weighing mechanism," which, with the drum, will produce a practicable automatic weighing scale. Though they are broader than original claim 2, they are not broader than the invention described as Smith's in his original statement of invention. In his application for reissue, made promptly and before any rights of defendant or the public had intervened, he swore that he had not intended to dedicate that principal part of his invention to the public, and that the omission of claims of the character of 5 and 6 had occurred through inadvertence. In our view the Commissioner was warranted in granting the reissue. Compare Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658; Houghton v. Whitin Machine Works, 153 Fed. 740, 83 C. C. A. 84; Gaskill v. Meyers, 81 Fed. 854, 26 C. C. A. 642.

It follows that the finding of validity and infringement of the reissue claims was correct.

[3] Claim 2 of the second patent shows that all that Smith contributed to the art, beyond the disclosures of his reissue patent, was to

put upon the indicator-drum a column of figures, in inverse order to that of the column already there, so that the purchaser might read the weight through an opening in the back of the casing. If the concept involved had been Smith's, there might not be much difficulty in sustaining the claim, however obvious the application of the concept might seem. But the whole idea was old. "Back-indication," by reversing the figures, had long been commonly employed in indicating apparatuses, like cash-registers for example (Pottin's patent, No. 312,014 and others); and whatever claim might otherwise have been made for ingenuity in modifying and adapting the old means to an automatic computing scale is destroyed by referring to the way Smith had already put upon the drum the column of figures to be read by the seller. This claim, we think, is clearly void for lack of invention.

[4] In regard to the acknowledgment of a corporation's conveyance, the Massachusetts statutes (Rev. Laws Mass. 1902, c. 127, §§ 7 and 18) required (what is commonly called for in all jurisdictions with which we are familiar) that the notary's certificate should show that the persons who signed as officers were personally known to the notary, that on oath they stated they were such officers and were authorized by the board of directors to execute the instrument, and that the corporation either had no seal or that its genuine seal was affixed to the instrument, and that they thereupon acknowledged said instrument to be the free act and deed of the corporation. Execution of the instruments here in question was not proven by testimony. Certified copies of assignments of patents, not duly acknowledged, are not proof of execution. Paine v. Trask (C. C.) 56 Fed. 233; New York v. Cable Ry. Co., 60 Fed. 1016, 9 C. C. A. 336; National Co. v. Navy Co. (C. C.) 99 Fed. 89. As the acknowledgments of these assignments are insufficient in every respect to constitute good corporate acknowledgments, the record is barren of proof of execution.[1]

The decree is reversed with the direction to dismiss the bill on the second patent and to permit complainant to introduce proofs of title to the first patent.

[1] On the sufficiency of the acknowledgments defendant cited: Lumbard v. Aldrich, 6 N. H. 269; Bennett v. Knowles, 66 Minn. 4, 68 N. W. 111; Lovett v. Sawmill Association, 6 Paige, Ch. (N. Y.) 60; People v. Deyoe, 2 Thomp. & C. (N. Y.) 142; Malloye v. Coulrough, 96 Cal. 649, 31 Pac. 622; Holt v. Trust Co., 11 S. D. 456, 78 N. W. 947; Endowment Ass'n v. Fisher, 71 Md. 430, 18 Atl. 808; Klemme v. McLay, 68 Iowa, 158, 26 N. W. 53; Machesney v. Brown (C. C.) 29 Fed. 145. And complainant cited: Tenney v. East Warren Lumber Co., 43 N. H. 343; Banner v. Rosser, 96 Va. 252, 31 S. E. 67; Catherine D. Fitch v. Lewiston Steam Mill Company et al., 80 Me. 34, 12 Atl. 732; The Frostburg Mut. Bldg. Ass'n v. Wm. Brace et al., 51 Md. 508; Ferguson et al. v. Ricketts et al. (Tex. Civ. App.) 55 S. W. 975.